[No. 9040–2–I. Division One. June 22, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES MAESSE, *Appellant.*

*Jo Ann Oliver* of *Seattle–King County Public Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Carol Hepburn, Deputy,* for respondent.

CALLOW, J.—The defendant, James Duane Maesse appeals from a juvenile disposition adjudicating him guilty of second degree arson.

The issues presented on appeal are:

1. Is that part of finding of fact No. 6 which states that Officer "Mollendorf received instructions over the radio, which originated in McJunkins, to arrest [Maesse]," supported by substantial evidence?

2. In determining whether the arresting officer had probable cause to arrest, may the facts and circumstances known to other officers involved in the investigation, one of whom directed the arresting officer to arrest the defendant, be considered?

3. Was the defendant's arrest supported by probable cause?

4. Were the defendant's admissions concerning the setting of previous fires admissible into evidence?

After a hearing on the defendant's motion to suppress certain statements made following his arrest, the trial court entered the following findings of fact:

I.

On May 8, 1980, a little before eight o'clock in the morning the Seattle Fire Department received an alarm regarding a house fire . . .

II.

Investigators McJunkins and Turner arrived at approximately 8:10 a.m. and observed thick black smoke emanating from the burning building, as well as two people leaving the scene of the fire whom they stopped and

identified as Clifford Jarvis and Oliver Davies. Jarvis told McJunkins he was the first person on the scene other than a white male fifteen to sixteen years old wearing an orange jacket and a yellow baseball cap whom he had seen coming out of the bushes and who displayed some excitement about the fire.

### III.

A short time later McJunkins overheard [Maesse], who matched the description given by Jarvis, talking to two young women. He heard [Maesse] tell them that he had come from the burning house and had discovered the fire. [Maesse] then noticed McJunkins and appeared nervous at having apparently been overheard.

### IV.

Investigator Turner reported to McJunkins that he had spoken with a neighbor, Frank Bolden, who stated that he had seen a boy dressed in an orange jacket and yellow baseball cap running from the area of the burning house just prior to the fire.

### V.

Seattle Police Officers Bottin and Mollendorf also talked to witness Bolden who presents himself as a reliable and sensible person. Bolden related to the officers that he had seen a teenage boy, white, wearing an orange jacket and yellow baseball cap running from the area prior to the fire and that the same boy had later returned to the scene.

### VI.

Bottin and Mollendorf were in communication with other officers at the scene both in person and through the police radio which Mollendorf was carrying. Mollendorf received instructions over the radio, which originated in McJunkins, to arrest [Maesse].

### VII.

Bottin observed [Maesse] at the scene watching the fire in a trance–like daze. [Maesse] was wearing an orange jacket and yellow baseball cap and was the only person so dressed.

VIII.

Officers Bottin and Mollendorf arrest [Maesse] and escorted him to their police vehicle . . .

IX.

The additional information, developed by Investigator McJunkins, was known by him prior to the arrest by Officer Bottin. Bottin did not know that information at time of arrest.

Based upon these findings, the trial court concluded that Officer Bottin had probable cause to arrest the defendant based upon the information provided to him, and therefore denied the motion to suppress. Following trial to the court, Maesse was found guilty of second degree arson.

The first issue is whether that part of finding of fact No. 6 which states that "Mollendorf received instructions over the radio, which originated in McJunkins, to arrest [Maesse]," is supported by substantial evidence.

The defendant does not assign error to the entry of finding of fact No. 6; however, he contends that part of this finding is not based upon evidence in the record. We disagree. Officer Mollendorf testified that he and Bottin were notified over the radio to detain the defendant Maesse. Officer Mollendorf testified that he did not know the name of the officer who gave the directive to detain Maesse, but Officer McJunkins testified that it was he who had determined that Maesse should be placed under arrest. Thus, the trial court's finding that the instruction originated from McJunkins is supported by the record, and it is immaterial whether the person who radioed the instruction was McJunkins or someone else. In any event, Mollendorf received instructions to arrest Maesse over the radio.

The second issue presented is whether the facts and circumstances known to other officers involved in an investigation may be considered in determining the existence of probable cause to arrest.

We find the following in 1 W. LaFave, *Search and Seizure* § 3.5, at 623–27 (1978) discussing the "fellow officer" rule which originated in *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct.

1031 (1971):

> Thus, under the *Whiteley* rule (or, as it is sometimes termed, the "fellow officer" rule) police are in a limited sense "entitled to act" upon the strength of a communication through official channels directing or requesting that an arrest be made. . . . [W]hen the question arises in the context of an effort to exclude evidence obtained as a consequence of action taken pursuant to the communication, then the question legitimately is whether the law enforcement system as a whole has complied with the requirements of the Fourth Amendment, which means that the evidence should be excluded if facts adding up to probable cause were not in the hands of the officer or agency which gave the order or made the request. . . .
>
> . . .
> *Whiteley* has been properly applied by the lower courts to a variety of situations. Clearly, the fellow officer rule is applicable to situations involving all modes of communication, including radio, telephone, teletype and face–to–face contact. . . .
> As for the nature of the requisite showing, dictum in some of the cases suggests that it is necessary to trace the action of the arresting officer back to some other specific person in the same or another law enforcement agency and show that the latter *individual* had brought together a sufficient collection of underlying facts to add up to probable cause. Other cases, again by way of dictum, indicate that it will suffice that the directing or requesting *agency* possessed all the facts needed to show probable cause. Should a choice between these two positions become critical, it seems likely a court would more readily opt for the latter and broader proposition, for it squares with the oft–stated notion that "in determining whether probable cause existed we must evaluate the collective information of all the officers."

(Footnotes omitted.)

*People v. Baca,* 198 Colo. 399, 401, 600 P.2d 770, 771 (1979), described the "fellow officer" rule as follows:

> That rule provides that an arresting officer who does not personally possess sufficient information to constitute probable cause may still make a warrantless arrest if (1) he acts upon the direction or as a result of a communication from a fellow officer, and (2) the police, as a

whole, possess sufficient information to constitute probable cause.

*United States v. Bernard,* 623 F.2d 551 (9th Cir. 1979), held that in evaluating whether there was probable cause, the collective knowledge of the arresting officers should be considered even though the substance of the information obtained by other officers had not been communicated to the arresting officer.

In *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974), probable cause was based upon information given to the arresting officers by police radio. Similarly, in *State v. Vanzant,* 14 Wn. App. 679, 544 P.2d 786 (1975), the arresting officer was permitted to rely upon another officer's information in making an arrest, and in *State v. Sinclair,* 11 Wn. App. 523, 523 P.2d 1209 (1974), the arresting officer was permitted to rely upon information from police headquarters in making an arrest. These cases support that aspect of the fellow officer rule which permits probable cause to be determined upon the information possessed by the police as a whole when they are acting in concert. The rule does not require a finding of probable cause to be based solely upon the personal or subjective knowledge of the arresting officer. We agree that in those circumstances where police officers are acting together as a unit, cumulative knowledge of all the officers involved in the arrest may be considered in deciding whether there was probable cause to apprehend a particular suspect.

The third issue before us is whether the defendant's arrest was supported by probable cause.

*State v. Gluck* defined probable cause as follows:

Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been or is being committed.

*State v. Gluck, supra* at 426–27. *See also State v. Scott,* 93 Wn.2d 7, 604 P.2d 943 (1980).

When all the information known by the officers of the

investigating agency is considered, it is apparent that probable cause existed to arrest the defendant. The officers had a reasonable basis for concluding that the fire was the result of arson because of the thick black smoke emanating from the burning building. One of the officers testified that smoke was indicative of a fire of a very rapid origin and that a flammable accelerant may have been used to ignite it. The officers were also aware that the defendant had been seen running from the area of the fire; he was excited about the fire; and, he had told bystanders that he had come from the burning house. One of the officers overheard this conversation and also observed that the defendant was nervous about being overheard. In considering the information known by the investigating officers, and the directive of a fellow officer involved in the investigation to arrest Maesse, there was probable cause to believe that a crime had been committed and that Maesse had committed it.

The fourth issue raised is whether the defendant's admissions concerning the setting of previous fires were admissible in evidence.

The defendant contends that several admissions made following his arrest concerning the setting of other fires should not have been admitted under *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952). We disagree. The *Goebel* rule was adopted in ER 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.*

(Italics ours.) The comment to ER 404(b) states that "[t]he court must determine whether the danger of undue prejudice outweighs the probative value of the evidence, in view of the availability of other means of proof and other factors." The trial court is vested with wide discretion in determining if the danger of unfair prejudice outweighs its probative value. *State v. Tharp,* 27 Wn. App. 198, 616 P.2d

693 (1980); ER 403.

Here, the defendant's admissions concerning the setting of other fires is relevant to prove second degree arson under RCW 9A.48.030. It is probative of his state of mind, and rebutted any defense of mistake or accident. In one statement, the defendant stated that on a previous occasion he had put his cigarette on a board while he left to relieve himself and when he returned, the room was ablaze. In another, he stated that he had built a fire in a container, knocked the container over, and the fire went out of control. These statements claiming that previously set fires were caused by accident when the circumstances of those incidents strongly indicate that those fires were intentionally set, permits the introduction of such statements as probative of the defendant's state of mind under the concepts articulated in ER 404(b).

The case having been tried to the court, it is presumed that the evidence was considered by the trial judge for its proper purpose. *State v. Adams,* 91 Wn.2d 86, 586 P.2d 1168 (1978); *State v. Bell,* 59 Wn.2d 338, 368 P.2d 177 (1962); *In re Noble,* 15 Wn. App. 51, 547 P.2d 880 (1976).

The judgment is affirmed.

JAMES, C.J., and ANDERSEN, J., concur.

Reconsideration denied July 9, 1981.

Review denied by Supreme Court October 16, 1981.