[No. 76743-2. En Banc.]
Argued January 24, 2006. Decided July 13, 2006.

THE STATE OF WASHINGTON, *Respondent*, v. ASHLEY MARIE WALKER, *Petitioner*.

*Steven P. Martonick* (of *Snyder & Martonick Law Offices*), for petitioner.

*Denis P. Tracy*, *Prosecuting Attorney*, and *Byron Bedirian*, *Deputy*, for respondent.

*Pamela B. Loginsky* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

*Suzanne L. Elliott* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

¶1 C. JOHNSON, J. — This case involves a constitutional challenge to RCW 10.31.100(1), which codifies and expands the common law rule allowing for warrantless misdemeanor arrests only when the misdemeanor occurs in the officer's presence. The statute authorizes warrantless arrests in certain circumstances. In this case, the petitioner was arrested without a warrant for a misdemeanor involving the use of cannabis not occurring in the presence of the officer. In a search incident to the arrest, methamphetamine was discovered in the petitioner's purse. Petitioner moved to suppress the methamphetamine evidence, arguing the underlying arrest was unlawful. The trial court granted the petitioner's motion and the Court of Appeals reversed. We affirm the appellate court's decision but on different grounds. We hold RCW 10.31.100(1) does not violate article I, section 7 of the Washington State Constitution.

## FACTUAL AND PROCEDURAL HISTORY

¶2 On July 11, 2003, Colfax police officers and Whitman County deputies were called to investigate a burglary. During their investigation, the officers approached a parked car in which petitioner Ashley Walker and another individual, Richard Kennedy, were sitting. According to the police report of Deputy Keith Cooper, the following transpired:

> I asked Kennedy and Walker if they had been drinking. Kennedy said he had been drinking. Walker said she did not drink. While talking to Kennedy I noticed the pupils of his eyes were extremely dialated [sic]. I asked If [sic] they had smoked any marijuana. Kennedy said he could not use drugs because he took random urinary analysis. Walker said she smoked marijuana before she left her house in Spokane. I asked if she had any marijuana with her. Walker said she did not have any marijuana. Walker said she had a marijuana pipe in her bag. I asked Walker if she would get the pipe for me. Walker opened her purse and pulled out a blue glass pipe and handed it to me. Walker immediatly [sic] closed her purse after she gave me the

pipe. I looked at the pipe and noticed black residue in the bowl of the pipe.

I told Officer Szambelan Walker gave me a pipe she had in her purse. Officer Szambelan told Walker to stand up and told her she was under arrest for possession of drug paraphernalia.[1] He placed her in handcuffs and advised her of her [constitutional rights]. Officer Szambelan placed her in the seat of his patrol car. Officer Szambelan searched Walker's purse incident to lawful arrest. Upon searching her purse he located 2 glass pipes. He also found numerous small plastic baggies containing a white powdery substance.

Clerk's Papers at 12-13. The white powdery substance found in Walker's purse was methamphetamine. Walker was charged with one count of possession of methamphetamine with intent to deliver. Walker brought a motion in superior court to suppress the methamphetamine evidence, arguing the underlying arrest was unlawful. After oral argument, the court granted Walker's motion and dismissed the charges. The court reasoned that the crime for which Walker was charged, RCW 69.50.412(1),[2] was not specific to cannabis; therefore, the cannabis exception of RCW 10.31.100(1) did not apply. In an unpublished opinion, the Court of Appeals reversed, holding that RCW 10.31.100(1) applied and sufficient probable cause supported the arrest. *State v. Walker*, noted at 125 Wn. App. 1039 (2005). In a concurring opinion, Judge Brown noted it was immaterial the officer told Walker she was under arrest for *possession* of paraphernalia when in fact she was arrested for *use* of drug paraphernalia. Walker petitioned this court for discretionary review, which we accepted at 155 Wn.2d 1008 (2005).

---

[1] It is not illegal in Washington to possess drug paraphernalia. It is illegal to use drug paraphernalia under RCW 69.50.412(1).

[2] The statute reads: "[i]t is unlawful for any person to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance. Any person who violates this subsection is guilty of a misdemeanor."

## ISSUE PRESENTED

¶3 Does RCW 10.31.100(1) create a valid exception to the common law "in the presence" requirement for warrantless misdemeanor arrests under article I, section 7 of the state constitution?

## ANALYSIS

¶4 RCW 10.31.100(1) reads:

[a]ny police officer having probable cause to believe that a person has committed or is committing a misdemeanor or gross misdemeanor, involving physical harm or threats of harm to any person or property or the unlawful taking of property or involving the use or possession of cannabis, or involving the acquisition, possession, or consumption of alcohol by a person under the age of twenty-one years under RCW 66.44.270, or involving criminal trespass under RCW 9A.52.070 or 9A.52.080, shall have the authority to arrest the person.

¶5 Walker argues this statute is unconstitutional under article I, section 7. Walker first contends article I, section 7 of the constitution incorporates the common law rule that an officer may not make a warrantless arrest for a misdemeanor unless the misdemeanor was committed in the presence of the officer. Walker notes that while an exception existed at common law for misdemeanors amounting to a "breach of the peace," there was no exception at common law for cannabis. Thus, Walker concludes, RCW 10.31.100(1) is permissible only insofar as it codifies the common law rule; however, any other exception relating to offenses not committed in the presence of an officer is unconstitutional. Walker asserts the legislature is attempting to legislate away the warrant requirement embodied in our state constitution, one exception at a time.

¶6 The State argues Washington citizens have never held an absolute right to be free from warrantless misdemeanor arrests. The State points to several statutes

throughout Washington's history allowing for such arrests.[3] Additionally, the State contends article I, section 7 should allow some flexibility for changing social conditions. The State notes the common law itself is not a static doctrine but is often revised in response to changing social conditions. Instead of looking only at what was allowed when the constitution was adopted, the State urges this court to balance the legislature's interest in maintaining the health and welfare of society against the traditional privacy interests of its citizens. The State also argues that since the legislature has the power to classify crimes, the legislature has the authority to proscribe the circumstances under which an officer may make a warrantless arrest, so long as the officer has probable cause to believe a crime has been committed.

 ¶7 Article I, section 7 reads "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law" and requires a two-step analysis: was there a disturbance of one's private affairs and, if so, was the disturbance authorized by law? *In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 339, 945 P.2d 196 (1997). In reviewing constitutional issues under the Fourth Amendment and article I, section 7, it is well established that the federal constitution provides the minimum level of protection against warrantless searches and seizures and our state constitution generally provides greater protection. When presented with arguments under both the state and federal constitutions, we generally review the state constitution arguments first. *State v. Carter*, 151 Wn.2d 118, 125, 85 P.3d 887 (2004).

---

[3] The first statute cited was passed in 1893 and allowed for misdemeanor arrests of persons who abused fowl or insectivorous birds. LAWS OF 1893, ch. XXVII, § 9. The statute survives as RCW 16.52.015(4). The respondent also cites laws relating to prevention of cruelty to animals, LAWS OF 1901, ch. CXLVI, § 11; protection and sale of birds and fishes, LAWS OF 1911, ch. 90, § 2; game code, LAWS OF 1925, ch. 178, § 21, today found in RCW 77.15.092 and .094; and weights and measures, LAWS OF 1927, ch. 194, § 7, today found in RCW 19.94.260.

¶8 Walker, in an abbreviated *Gunwall*[4] analysis, points out that the United States Supreme Court has yet to determine if the federal constitution embodies the "in the presence" common law rule. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 341 n.11, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001) (holding the Fourth Amendment does not incorporate the common law prohibition against warrantless arrests for misdemeanors not amounting to a breach of the peace). Walker contends the United States Supreme Court has denied the existence of a general federal common law and thus, for questions involving common law, an independent state constitutional analysis is required. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).[5] Under the *Gunwall* factors, Walker focuses and relies exclusively on our prior cases to support her arguments.

¶9 This court has defined the scope of article I, section 7 as protecting "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984). Inherent in the process of defining the scope of protection under article I, section 7 is an examination of both the history of the interest at stake, relevant case law and statutes, and the current implications of recognizing or not recognizing the interest. *State v. McKinney*, 148 Wn.2d 20, 29, 60 P.3d 46 (2002).

¶10 The legislature, under its police powers, may grant police officers authority to arrest for certain crimes subject to public policy and constitutional limitations. *State v. Pulfrey*, 154 Wn.2d 517, 523, 111 P.3d 1162 (2005). While

---

[4] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

[5] Walker's characterization of *Erie* is misleading. The case actually holds that in diversity jurisdiction cases, a federal court must apply the law of the state as defined either by state statute or the state's highest court, not a general common law. Thus, as amicus Washington Association of Criminal Defense Lawyers notes, the question of whether the Fourth Amendment incorporated the common law "in the presence" requirement remains unanswered by the United States Supreme Court.

our cases have not specifically addressed the constitutionality of the legislative authority at issue here, cases have discussed this practice with approval. For example, in a challenge to former RCW 46.64.017 (1975), *repealed by* LAWS OF 1979, 1st Ex. Sess., ch. 28, § 4, the petitioner argued the statute was ambiguous and in derogation of the common law "in the presence" rule. Former RCW 46.64.017 authorized an officer investigating an accident scene to make a warrantless arrest of the driver of a car involved in the accident for violations of traffic laws or regulations. We affirmed the lower court's dismissal of the petitioner's conviction, reasoning that both an ambiguous statute and a statute in derogation of the common law required a strict reading. We noted, however, that "[i]t is for the legislature to extend the authority of law enforcement officers to arrest for misdemeanors not committed in their presence." *State ex rel. McDonald v. Whatcom County Dist. Court*, 92 Wn.2d 35, 38, 593 P.2d 546 (1979). The legislature responded by adding this exception to the exceptions listed in the current version of the challenged statute. RCW 10.31.100(4); LAWS OF 1979, 1st Ex. Sess., ch. 28, § 1.

¶11 In *State v. Hornaday*, 105 Wn.2d 120, 713 P.2d 71 (1986), a minor defendant challenged his arrest for possession of alcohol. Under former RCW 10.31.100 (1981), a minor in possession of alcohol was not a listed exception to the general warrant requirement of the statute. In finding the arrest illegal, we stated that it was "for the Legislature to extend the authority of law enforcement officers to arrest for misdemeanors not committed in their presence by extending the list of exceptions contained in RCW 10.31.100 . . . , thereby eliminating the requirement that the consumption or possession of alcohol occur 'in the presence' of the officer. This is a legislative, not a judicial, prerogative." *Hornaday*, 105 Wn.2d at 130. In response to our holding, the legislature expanded RCW 10.31.100(1) to explicitly include RCW 66.44.270, the minor in possession statute. LAWS OF 1987, ch. 154, § 1.

¶12 Finally, in a challenge to an arrest made pursuant to former RCW 75.10.020(2) (1983), *repealed by* LAWS OF 1998,

ch. 190, § 124, we again recognized the common law prohibition against warrantless misdemeanor arrests not committed in the presence of the arresting officer. A plurality of the court explained, "[t]his common law rule may be overcome by legislation to the contrary; however, a statute will not be construed in derogation of the common law unless the legislature has clearly expressed that purpose. Former RCW 10.31.100 does not change this common law but proves it by enumerating certain exceptions." *Staats v. Brown*, 139 Wn.2d 757, 766-67, 991 P.2d 615 (2000) (citations omitted).

■ ■ ¶13 Thus, we have consistently recognized that the legislature may expand a police officer's authority to arrest, even when the authority is in derogation of the common law. RCW 10.31.100, though in derogation of the common law, accords with the purpose of the common law "in the presence" rule. At common law, the "in the presence" rule was a balance of "accommodating the public need for the most certain and immediate arrest of criminal suspects with the requirement of magisterial oversight to protect against mistaken insults to privacy," with the result that "only in the most serious of cases could the warrant be dispensed with." *United States v. Watson*, 423 U.S. 411, 442, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976) (Marshall, J., dissenting). *See also Carroll v. United States*, 267 U.S. 132, 157, 45 S. Ct. 280, 69 L. Ed. 543 (1925) (stating "the reason for arrest without warrant on a reliable report of a felony [at common law] was because the public safety and the due apprehension of criminals charged with heinous offenses required that such arrests should be made at once without warrant"). RCW 10.31.100 is consistent with the spirit of the common law "in the presence" rule because it favors arrests made pursuant to a warrant but allows for exceptions in limited situations. These exceptions reflect the legislature's determination that the need for immediate arrest outweighs the possibility of a mistaken arrest. We note the exceptions listed in RCW 10.31.100 address social problems either not recognized or not present during com-

mon law, such as domestic violence, driving under the influence, and the individual and social costs of marijuana abuse.

¶14 In support of our recognition that the legislature may expand arrest authority for police officers, we recognize the legislature has authority to classify crimes as either felonies or misdemeanors and, thus, to initially determine the arrest authority needed. Many crimes that were originally misdemeanors at common law are now classified as felonies. The legislature has, therefore, determined these crimes represent a greater threat to society, deserve a greater punishment for those who commit them, and are serious enough to outweigh the usual warrant requirement where the arrest is based on probable cause. By reclassifying these crimes as felonies, the legislature has, in effect, changed the authority needed for arrest from the general warrant requirement to probable cause. Because the legislature has the authority to classify crimes as either felonies or misdemeanors, the legislature, by extension, has the authority to determine arrest requirements, subject to constitutional and public policy limits. This allows the legislature to balance the privacy rights of Washington citizens against the social ills confronting the citizens of Washington in order to determine when exceptions to the warrant requirement are necessary. As we explained in *Staats*, "RCW 10.31.100 does not change this common law but proves it by enumerating certain exceptions." *Staats*, 139 Wn.2d at 767.

¶15 Finally, we find no history that an absolute constitutional right to be free from warrantless misdemeanor arrests exists. For example, in 1893 it was a misdemeanor to "wantonly or cruelly pluck, maim, torture, deprive of necessary food or drink, or wantonly kill any fowl or insectivorous bird." LAWS OF 1893, ch. XXVII, § 8. The legislation provided that "any . . . member of any humane society, or society for the prevention of cruelty to animals, may cause the immediate arrest of any person engaged in, or who shall have committed such cruelties, upon making

oral complaint to any sheriff, constable or police officer, or such officer or member of such society may himself arrest any person found perpetrating any of the cruelties herein enumerated." LAWS OF 1893, ch. XXVII, § 9. The law is currently codified as RCW 16.52.015(4) and provides: "Upon request of an animal control officer who has probable cause to believe that a person has violated this chapter . . . , a law enforcement agency officer may arrest the alleged offender."

¶16 The statute at issue, when originally enacted in 1969, contained three exceptions: misdemeanors or gross misdemeanors involving physical harm or threats of harm to any person or property, the unlawful taking of property, and misdemeanors or gross misdemeanors involving the use or possession of cannabis. LAWS OF 1969, 1st Ex. Sess., ch. 198, § 1. As Walker notes, the statute has been amended at least 20 times since then and has been expanded to include 24 exceptions. These exceptions include underage drinking, driving under the influence, violations of protection orders, and situations involving domestic violence. Rather than supporting Walker's position, this history cuts against it. There is no tradition of an absolute right to be free from warrantless misdemeanor arrests. The authority to arrest has always been subject to legislative determination. We can find no cases from this state or any other state, nor any statutes or other laws, that support the argument that a person's private affairs encompass the constitutional right to be free from warrantless misdemeanor arrests. So long as legislative authority exists and any such arrest is based on probable cause, the arrest is valid.

¶17 This conclusion is supported by similar statutes in other states. Amicus Washington Association of Prosecuting Attorneys notes that every state provides for certain warrantless misdemeanor arrests involving domestic violence, even if they are not committed in the officer's presence. *See* Cheryl Hanna, *No Right to Choose: Mandated Victim Participation in Domestic Violence Prosecutions*, 109 HARV. L. REV. 1849, 1859 (1996); *see also* William A. Schroeder,

*Warrantless Misdemeanor Arrests and the Fourth Amendment*, 58 Mo. L. REV. 771, 811-17 (1993) (stating many jurisdictions have a general "in the presence" rule but also allow for warrantless misdemeanor arrests under certain circumstances or for specified misdemeanors). Significantly, all of these statutes, including the one at issue here, require the officer to have probable cause before making an arrest. Probable cause is a determination of whether the arresting officer could reasonably believe the person to be arrested has committed the crime. *State v. Fisher*, 145 Wn.2d 209, 221, 35 P.3d 366 (2001). It is the probable cause requirement in such statutes that makes them constitutional. *Erickson v. City Court*, 105 Ariz. 19, 458 P.2d 953 (1969) (distinguishing a constitutional Arizona statute allowing for warrantless misdemeanor arrests based on probable cause from an unconstitutional Alabama statute that had no probable cause requirement). Again, we find no case supporting a contrary conclusion.

¶18 Given the legislative history in our state, the original purpose of the requirement, the overwhelming practice of other jurisdictions to allow for limited warrantless misdemeanor arrests not committed in the presence of the arresting officer, and the statute's probable cause requirement, we find RCW 10.31.100 constitutional.

¶19 Although Walker appears to believe the Fourth Amendment does not apply to her situation, amicus Washington Association of Criminal Defense Lawyers (WACDL) submitted briefing arguing the Fourth Amendment incorporates the "in the presence" rule for warrantless misdemeanor arrests. WACDL relies on the discussion of common law warrantless misdemeanor arrests in *Atwater*, 532 U.S. at 326-27, and the intrusive nature of an arrest to conclude the Fourth Amendment prohibits warrantless misdemeanor arrests where the arresting officer was not present when the misdemeanor occurred.

¶20 The State points out the United States Supreme Court has never ruled directly on this issue but notes that every federal circuit court that has addressed the issue has

found the Fourth Amendment does not require the misdemeanor to occur in the officer's presence in order for a warrantless arrest to be valid.[6] The State also points to numerous state appellate courts that have similarly held the Fourth Amendment does not require adherence to the "in the presence" rule. *See, e.g., Penn v. Commonwealth*, 13 Va. App. 399, 412 S.E.2d 189 (1991), *aff'd*, 244 Va. 218, 420 S.E.2d 713 (1992). Finally, the State points out that every state has a statute authorizing police to make warrantless misdemeanor arrests for certain offenses involving domestic violence, even when the misdemeanor does not occur in the officer's presence. Hanna, *supra*, at 1859.

¶21 The Fourth Amendment reads: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Fourth Amendment must be read in light of the traditional protections afforded by the common law at the time it was drafted. Thus, our first step is to assess WACDL's claim that the common law strictly prohibited warrantless misdemeanor arrests. *Atwater*, 532 U.S. at 326-27.

¶22 In *Atwater*, the Court engaged in an extensive review of the common law at the time the Fourth Amendment was adopted. *Atwater*, 532 U.S. at 327-36. The Court, which ultimately concluded the amendment did not incorporate the "breach of peace" rule for warrantless misdemeanor arrests, found "statements about the common law of warrantless misdemeanor arrest simply are not uniform." *Atwater*, 532 U.S. at 329. Having found the common law was not dispositive of the issue, the Court went on to look at how the states viewed the common law at the time

---

[6] *Woods v. City of Chicago*, 234 F.3d 979 (7th Cir. 2000); *Vargas-Badillo v. Diaz-Torres*, 114 F.3d 3 (1st Cir. 1997); *United States v. Smith*, 73 F.3d 1414 (6th Cir. 1996); *Fields v. City of Houston*, 922 F.2d 1183 (5th Cir. 1991); *Barry v. Fowler*, 902 F.2d 770 (9th Cir. 1990); *Street v. Surdyka*, 492 F.2d 368 (4th Cir. 1974).

they ratified the constitution and found "[f]ounding-era receptions of common law, whether by state constitution or state statute, generally provided that common-law rules were subject to statutory alteration." *Atwater*, 532 U.S. at 338 n.9. *See also* WASH. CONST. art. XXVII, § 2 ("All laws now in force in the Territory of Washington, which are not repugnant to this Constitution, shall remain in force until they expire by their own limitation, or are altered or repealed by the legislature. . . ."). Finally, the Court examined if the rule had become " 'woven . . . into the fabric' " of American law. *Atwater*, 532 U.S. at 340 (quoting *Wilson v. Arkansas*, 514 U.S. 927, 933, 115 S. Ct. 1914, 131 L. Ed. 2d 976 (1995)).

¶23 For purposes of our Fourth Amendment analysis, we will assume without deciding the common law required strict adherence to the "in the presence" rule. However, the Fourth and Seventh Circuit appellate courts, as discussed below, also recognized the "in the presence" rule as the common law rule but concluded the Fourth Amendment did not require it. *Woods v. City of Chicago,* 234 F.3d 979, 992 (7th Cir. 2000); *Street v. Surdyka,* 492 F.2d 368, 371 (4th Cir. 1974). We therefore find the assumption that the common law uniformly required strict adherence to the "in the presence" rule is not dispositive of the issue.

¶24 After declaring the common law required the "in the presence" rule, the federal appellate courts went on to further analyze the issue, focusing on how the Supreme Court, Congress, and the states have viewed the common law. For example, in *Surdyka*, the court noted that while the Supreme Court has referenced the "in the presence" rule as the common law rule, it also suggested the rule could be relaxed by statute. *Surdyka*, 492 F.2d at 371 (citing *Elk v. United States*, 177 U.S. 529, 535, 20 S. Ct. 729, 44 L. Ed. 874 (1900) ("[w]e do not find any statute of the United States or of the State of South Dakota giving any right to these men to arrest an individual without a warrant on a charge of misdemeanor not committed in their presence")). The Fourth Circuit also based its conclusion on the fact that

the Court has since focused its inquiry on the requirement of probable cause and not the classification of the underlying crime as a misdemeanor or felony. *Surdyka*, 492 F.2d at 371-72. Finally, the court relied on the fact that Congress, under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801-971, statutorily authorized warrantless arrests for some civil crimes and misdemeanors based on probable cause. *Surdyka*, 492 F.2d at 372 n.6. Since *Surdyka*, the First, Fifth, Sixth, Seventh, and Ninth Circuits have all reached the same conclusion using similar reasoning.[7] Based on the reasoning and unanimity of the federal courts, we are satisfied the Fourth Amendment does not require strict adherence to the "in the presence" rule as advocated by WACDL.

## CONCLUSION

¶25 We find no constitutional basis to support an absolute right to be free from warrantless misdemeanor arrests in the state of Washington. The legislature may provide exceptions to the common law "in the presence" rule to allow for such arrests in response to changing social conditions. We also find the Fourth Amendment did not incorporate the common law "in the presence" rule for warrantless misdemeanor arrests. Because we conclude RCW 10.31.100(1) is constitutional, we find the petitioner's underlying arrest was lawful. We affirm the Court of Appeals and remand for further proceedings.

ALEXANDER, C.J., and MADSEN, BRIDGE, OWENS, and FAIRHURST, JJ., concur.

¶26 CHAMBERS, J. (concurring) — I concur in result because the officer had proper grounds to arrest. Ashley Walker's arrest was valid because when she showed the officer a marijuana pipe with visible residue on it, the officer had probable cause to believe that she was committing

---

[7] *Woods*, 234 F.3d 979; *Vargas-Badillo*, 114 F.3d 3; *Smith*, 73 F.3d 1414; *Fields*, 922 F.2d 1183; *Barry*, 902 F.2d 770.

misdemeanor possession of marijuana in his presence. *See* RCW 69.50.4014; *State v. Hornaday*, 105 Wn.2d 120, 126, 713 P.2d 71 (1986) ("The question is whether the officer had probable cause to believe that a crime was being committed *in his presence.*"). There is no minimum amount required to sustain a conviction for possession of controlled substances. *See State v. Malone*, 72 Wn. App. 429, 439, 864 P.2d 990 (1994). The residue alone may suffice. *State v. Williams*, 62 Wn. App. 748, 751, 815 P.2d 825 (1991). Although this was not the stated reason for her arrest, a misstatement at the time of the reason for the arrest is not automatically fatal to its validity. *See, e.g., State v. Vangen*, 72 Wn.2d 548, 554, 433 P.2d 691 (1967); *State v. Huff*, 64 Wn. App. 641, 646, 826 P.2d 698 (1992).

¶27 I would, therefore, avoid the constitutional question because the issue of the validity of the arrest can be resolved on other grounds. *See Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 752, 49 P.3d 867 (2002). Since the majority has chosen to address the constitutional question, I write separately to express my concerns about the majority's conclusion that the legislature may validly create new exceptions to the misdemeanor arrest rule without any meaningful review by this court.

¶28 Article I, section 7 of Washington's Constitution protects the people of this state from searches and seizures without "authority of law." CONST. art. I, § 7. With certain narrow exceptions, authority of law means a warrant. *State v. Ladson*, 138 Wn.2d 343, 349-50, 979 P.2d 833 (1999). The warrant requirement was intended to create a system in which, generally, the decision that an arrest or search is an appropriate exercise of governmental power will be made by a neutral and detached magistrate, instead of by the officer engaged in the "often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 13-14, 68 S. Ct. 367, 92 L. Ed. 436 (1948). Because the court's holding today follows in the steps of others that have the potential to seriously erode that constitutional layer of protection, *cf. State ex rel. McDonald v. Whatcom County*

*Dist. Court,* 92 Wn.2d 35, 38, 593 P.2d 546 (1979), I write separately to express some cautionary thoughts.

¶29 I agree with the majority that the legislature may grant police officers authority to arrest subject to constitutional limitations. Majority at 314. However, the exceptions to the general warrant requirement are of constitutional stature, and the legislature may not extend those exceptions beyond the limits of article I, section 7.

> "Except in the rarest of circumstances, the 'authority of law' required to justify a search pursuant to article I, section 7 consists of a valid search warrant or subpoena issued by a neutral magistrate. This court has never found that a statute requiring a procedure less than a search warrant or subpoena constitutes 'authority of law' justifying an intrusion into the 'private affairs' of its citizens. This defies the very nature of our constitutional scheme."

*Ladson,* 138 Wn.2d at 352 n.3 (quoting *In re Pers. Restraint of Maxfield,* 133 Wn.2d 332, 345-46, 945 P.2d 196 (1997) (Madsen, J., concurring)). *Accord United States v. United States Dist. Court,* 407 U.S. 297, 317, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972) (warrant requirement under Fourth Amendment "accords with our basic constitutional doctrine that individual freedoms will best be preserved through a separation of powers and division of functions among the different branches and levels of Government"). I would, therefore, hold that RCW 10.31.100(1) is unconstitutional insofar as it purports to authorize warrantless arrests for cannabis related misdemeanors even if not committed in the presence of an officer.

¶30 While the legislature may authorize courts to issue warrants, it may not dispense with the warrant requirement altogether. *Ladson,* 138 Wn.2d at 352. *See also State v. O'Neill,* 148 Wn.2d 564, 595, 62 P.3d 489 (2003) (Chambers, J., concurring). Nor may it unilaterally dispense with the requirement in specific situations by creating new statutory exceptions unrooted in the common law. *City of Seattle v. McCready,* 123 Wn.2d 260, 280 n.11, 868 P.2d 134 (1994) (rejecting the position that "a statute is categorically

sufficient to provide the authority of law necessary to satisfy Const. art. 1, § 7").

¶31 Article I, section 7 " 'is declaratory of the common-law right of the citizen not to be subjected to search or seizure without warrant.' " *State v. Ringer*, 100 Wn.2d 686, 691, 674 P.2d 1240 (1983) (quoting *State v. McCollum*, 17 Wn.2d 85, 96, 136 P.2d 165, 141 P.2d 613 (1943) (Millard, J., dissenting)), *overruled in part by State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986); *see also State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). This court has never approved any exception to that general rule except those based on " 'well-established principles of the common law.' " *Ladson*, 138 Wn.2d at 349-50 (quoting *McCready*, 123 Wn.2d at 273). Those exceptions are narrowly drawn. *See, e.g., State v. Jones*, 146 Wn.2d 328, 335, 45 P.3d 1062 (2002). I would hold that under article I, section 7, exceptions to the warrant requirement must be firmly rooted in principles recognized in 1889 when our constitution was adopted. *See Ringer*, 100 Wn.2d at 690 ("In construing Const. art. 1, § 7 we look initially to its origins and to the law of search and seizure at the time our constitution was adopted.").

¶32 When article I, section 7 was adopted, the common law permitted warrantless arrests for a felony on probable cause and for misdemeanors committed in the presence of the officer. *Ringer*, 100 Wn.2d at 691; *see also* Charles W. Johnson, *Survey of Washington Search and Seizure Law: 2005 Update*, 28 SEATTLE U. L. REV. 467, 591 (2005). The warrant requirement is designed to reduce the "dangers of unlimited and unreasonable arrests of persons who are not at the moment committing any crime." *Trupiano v. United States*, 334 U.S. 699, 705, 68 S. Ct. 1229, 92 L. Ed. 1663 (1948), *overruled in part on other grounds by United States v. Rabinowitz,* 339 U.S. 56, 70 S. Ct. 430, 94 L. Ed. 653 (1950). But in some circumstances, the public good of investigating, stopping, or preventing crime outweighs the risk to the individual of erroneous arrest. In the case of felonies, the seriousness of the crime weighs more heavily on the side of the public good. *See, e.g., Carroll v. United*

*States*, 267 U.S. 132, 157, 45 S. Ct. 280, 69 L. Ed. 543 (1925) ("[T]he reason for arrest without warrant on a reliable report of a felony was because the public safety and the due apprehension of criminals charged with heinous offenses required that such arrests should be made at once without warrant.").

¶33 In the case of misdemeanors, the thumb is taken off the scale and the balance tips back in favor of requiring a warrant. *See Welsh v. Wisconsin*, 466 U.S. 740, 754 n.14, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984) ("[T]he penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense.").

¶34 When a misdemeanor is committed in the officer's presence, however, the risk of error is so decreased that the scale tips toward allowing immediate arrest. Although seriousness does not weigh on the side of the public need, the potential of unfair burden on an individual is greatly reduced. *See, e.g., United States v. Watson*, 423 U.S. 411, 426 n.1, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976) (Powell, J., concurring) (observing that there is no reason to require a warrant where an offense is committed in the officer's presence; "such an arrest presents no danger that an innocent person might be ensnared, since the officer observes both the crime and the culprit with his own eyes"); *Trupiano*, 334 U.S. at 705 (The dangers of unlimited and unreasonable arrests "are not present where a felony plainly occurs before the eyes of an officer of the law."); *Gramenos v. Jewel Cos.*, 797 F.2d 432, 441 (7th Cir. 1986) (Making certain that "the officer has seen the crime committed . . . greatly reduces the chance of mistaken arrest.").

¶35 When the misdemeanor constitutes a breach of the peace, the thumb comes down again on the side of the public good. A breach of the peace includes at the very least a "threat of violence." *See Atwater v. City of Lago Vista*, 532 U.S. 318, 328 n.2, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001).

The reason for arrest for misdemeanors without warrant at common law was "promptly to suppress breaches of the peace." *See Carroll*, 267 U.S. at 157; William A. Schroeder, *Warrantless Misdemeanor Arrests and the Fourth Amendment*, 58 Mo. L. REV. 771, 789 (1993) ("English common law 'permitted immediate arrest of those committing or threatening to commit a breach of the peace in order to protect the people of the community from acts of violence.'" (quoting EDWARD C. FISHER, LAWS OF ARREST § 87, at 188 (1987))). Authorities are divided on whether, under the common law, warrantless arrests were permitted only for breaches of the peace committed in the presence of the officer, or whether breaches of the peace constituted an exception to the presence requirement. *See Atwater*, 532 U.S. 318. But there is no evidence of any exception to the presence requirement other than for breaches of the peace. *See id.*

¶36 The development of Washington law since adoption of article I, section 7 generally reflects this principle. Except for the relatively recent cannabis exception,[8] most of the statutes creating exceptions to the misdemeanor arrest rule involve violence or the threat of violence to persons, animals, or property. *See, e.g.*, LAWS OF 1893, ch. XXVII, § 9 (permitting warrantless arrest for cruelty to various animals); LAWS OF 1969, 1st Ex. Sess., ch. 198, § 1 (physical harm or threat to property); RCW 10.31.100(2)(a) (violation of protection order); RCW 10.31.100(2)(a)-(c) (domestic violence).

¶37 I would hold that the statute permitting warrantless arrest for cannabis related misdemeanors not occurring in the officer's presence violates article I, section 7. The substantial risk of erroneous arrest exists because the alleged crime did not take place in the presence of the arresting officer. There was no breach of the peace because cannabis related crimes, such as possession and use of marijuana, are not violent crimes. *See State v. Ramirez*, 49 Wn. App. 814, 820-21, 746 P.2d 344 (1987).

---

[8] The statute was first enacted in 1969. *See* LAWS OF 1969, 1st Ex. Sess., ch. 198, § 1.

¶38 I respectfully disagree with the majority's assertion that because the legislature can designate an offense as a felony or a misdemeanor, it must necessarily also have the power to determine the standards under which an arrest may occur. Punishment for a crime is a different matter altogether from arrest. Determining the punishment for a crime is clearly within the legislature's power. *See State v. Mulcare*, 189 Wash. 625, 628, 66 P.2d 360 (1937) ("Fixing of penalties or punishments for criminal offenses is a legislative function, and the power of the legislature in that respect is plenary and subject only to constitutional provisions against excessive fines and cruel and inhuman punishment." (citing *State v. Duff*, 144 Iowa 142, 122 N.W. 829 (1909))). But arrest cannot be considered a penalty or a punishment because at the time of arrest, the detainee has not been convicted of any crime and is not subject to punishment. *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) (punishment may be imposed only after formal adjudication). Arrest is the "quintessential seizure." *Atwater*, 532 U.S. at 360 (O'Connor, J., dissenting). It is not the legislature but the constitution, as interpreted by the courts, that determines the scope of constitutional protections such as those against unreasonable seizure. *Ladson*, 138 Wn.2d at 352 n.3.

¶39 I would hold that the statute purporting to authorize Walker's warrantless arrest for a misdemeanor not committed in the presence of the officer and not constituting a breach of the peace is unconstitutional. However, because Walker was validly arrested for misdemeanor possession of marijuana, committed in the presence of the officer, I concur in the result.

SANDERS and J.M. JOHNSON, JJ., concur with CHAMBERS, J.