248 P.3d 1062 (2011)
159 Wash.App. 889
STATE of Washington, Respondent,
v.
Gregorio Bravo ORTEGA a.k.a. Martin Dominguez Hernandez, Appellant.
No. 64008-9-I.
Court of Appeals of Washington, Division 1.
February 7, 2011.
*1063 Nancy P. Collins, Washington Appellate Project, Seattle, WA, for Appellant.
Michael John Pellicciotti, Office of the King County Prosecuting Attorney, Seattle, WA, for Respondent.
APPELWICK, J.
¶ 1 Ortega appeals his conviction for possession of cocaine with intent to deliver. Ortega argues the arresting officer did not have the authority to arrest him without a warrant because Ortega did not commit a misdemeanor in his presence as required by RCW 10.31.100. Therefore, the search incident *1064 to that arrest was illegal, and the evidence should have been suppressed. The State responds that the arresting officer had probable cause to arrest Ortega for a felony and that the fellow officer rule provided the arresting officer with probable cause to arrest Ortega for a misdemeanor. We hold that the presence requirement of RCW 10.31.100 was satisfied and affirm.

FACTS
¶ 2 After receiving complaints from local business owners, several officers from the Seattle Police Department's Community Police Team organized an investigation into suspicious drug activity in the Belltown neighborhood of Seattle. Officer Chad McLaughlin positioned himself to surveil the street from the second floor of a local business. Officers David Hockett and Anthony Gaedcke, the arrest team, positioned themselves nearby in patrol cars.
¶ 3 From his surveillance location, McLaughlin observed Gregorio Ortega walking aimlessly with co-defendant Alfonso Cuevas. As McLaughlin watched, Ortega and Cuevas attempted to contact passersby through eye contact and head nods. They nodded at two passersby, who then walked with Ortega and Cuevas a short distance until the four of them stopped, and another passerby joined them. Ortega huddled by a payphone with two of the individuals, appearing to make exchanges of small items, while Cuevas paced the sidewalk, looking around. After each exchange, the other individuals quickly left the area. After completing the second suspected transaction, Ortega and Cuevas began walking away together. As they walked away, Ortega and Cuevas were approached by a female, who then walked with them for a few yards. A short time later, Ortega and the female stopped and stepped off the sidewalk to make a quick hand-to-hand transaction while Cuevas again appeared to act as a lookout. Ortega and Cuevas quickly walked away, as did the female. McLaughlin believed he was observing narcotics transactions, but he could not confirm that any of the items exchanged actually constituted a drug sale.
¶ 4 After the third suspected narcotics transaction, McLaughlin believed he had probable cause to arrest Ortega for drug traffic loitering, a gross misdemeanor. McLaughlin radioed Hockett and Gaedcke, informing them that probable cause existed to arrest Ortega and Cuevas and giving specific instructions on the location and appearance of the suspects. Responding immediately by patrol car, Hockett arrested and searched Ortega, locating small rocks of cocaine and $780 in cash on his person. McLaughlin maintained visual contact with the suspects up to the time of the arrest, which occurred approximately 30 seconds after he radioed the arrest team. McLaughlin packed up his surveillance gear and met with Hockett and Gaedcke, immediately confirming that the suspects were the individuals he had observed.
¶ 5 The State charged Ortega with possession of cocaine with intent to deliver. In a pretrial hearing under CrR 3.6, the trial court heard evidence relating to Ortega's motion to suppress the evidence located during the search incident to arrest. The trial court then concluded that the officers were justified in arresting Ortega and denied the motion to suppress.
¶ 6 The case proceeded to trial. The jury found Ortega guilty as charged. The trial court sentenced Ortega to a standard sentence of 12 months plus one day. Ortega appeals.

DISCUSSION
¶ 7 An officer may conduct a warrantless search of the defendant's person only incident to a valid arrest. State v. Craig, 115 Wash.App. 191, 194-95, 61 P.3d 340 (2002). Ortega contends that he was arrested without authority, because the arresting officer lacked probable cause for a warrantless arrest for a misdemeanor. Therefore, he argues the trial court erred in denying his motion to suppress. We review conclusions of law in an order pertaining to suppression of evidence de novo. State v. Johnson, 128 Wash.2d 431, 443, 909 P.2d 293 (1996).
*1065 ¶ 8 Probable cause is the objective standard by which to measure the reasonableness of an arrest. State v. Graham, 130 Wash.2d 711, 724, 927 P.2d 227 (1996). Probable cause for a warrantless arrest for misdemeanors is limited by RCW 10.31.100, which states in part, "A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer," except as provided in certain listed exceptions.
¶ 9 The presence requirement originated in common law. William A. Schroeder, Warrantless Misdemeanor Arrests and the Fourth Amendment, 58 Mo. L.REV. 771, 788-89 (1993); see also City of Tacoma v. Harris, 73 Wash.2d 123, 126, 436 P.2d 770 (1968). The purpose for the common law rule was to allow an officer to prevent a breach of the peace:
"The common law did not authorize the arrest of persons guilty or suspected of misdemeanors, except in cases of an actual breach of the peace either by an affray or by violence to an individual. In such cases the arrest had to be made not so much for the purpose of bringing the offender to justice as in order to preserve the peace, and the right to arrest was accordingly limited to cases in which the person to be arrested was taken in the fact or immediately after its commission."
People v. Phillips, 284 N.Y. 235, 237, 30 N.E.2d 488 (1940) (quoting 1 JAMES FITZJAMES STEPHEN, A HISTORY OF THE CRIMINAL LAW OF ENGLAND 193 (1883)); See also Schroeder, supra, at 788-89. The "in the presence" rule was a balance of "`accommodating the public need for the most certain and immediate arrest of criminal suspects with the requirement of magisterial oversight to protect against mistaken insults to privacy' with the result that `only in the most serious of cases could the warrant be dispensed with.'" State v. Walker, 157 Wash.2d 307, 316, 138 P.3d 113 (2006) (quoting United States v. Watson, 423 U.S. 411, 442, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (Marshall, J., dissenting)); see also Carroll v. United States, 267 U.S. 132, 157, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (stating, "[T]he reason for arrest without warrant on a reliable report of a felony [at common law] was because the public safety and the due apprehension of criminals charged with heinous offenses required that such arrests should be made at once without warrant.").
¶ 10 The legislature codified the presence requirement in 1979. Former RCW 10.31.100 (Laws of 1979, 1st Ex.Sess., ch. 128, § 1). RCW 10.31.100, though in derogation of the common law, accords with the purpose of the common law in the presence rule. Walker, 157 Wash.2d at 316, 138 P.3d 113. RCW 10.31.100 favors arrests made pursuant to a warrant but allows for exceptions in limited situations. Id. When originally enacted, the statute contained three exceptions to the warrant requirement. Former RCW 10.31.100 (Laws of 1969, 1st Ex.Sess., ch. 198, § 1); Walker, 157 Wash.2d at 318, 138 P.3d 113. The statute has been amended at least 20 times since then and has been expanded to include 24 exceptions. Walker, 157 Wash.2d at 318, 138 P.3d 113; RCW 10.31.100. For example, the legislature removed the in the presence requirement for crimes involving physical harm to persons or property, violations of court orders, unlawful use of drugs and firearms, and specified traffic offenses. RCW 10.31.100. These exceptions reflect the legislature's determination that the need for immediate arrest outweighs the possibility of a mistaken arrest. Walker, 157 Wash.2d at 316, 138 P.3d 113. The Supreme Court noted in Walker that the exceptions listed in RCW 10.31.100 address social problems either not recognized or not present during common law, such as domestic violence, driving under the influence, and the individual and social costs of marijuana abuse. Id. at 316-17, 138 P.3d 113.
¶ 11 Ortega does not dispute that McLaughlin, as the observing officer, had probable cause to arrest him for the misdemeanor of drug traffic loitering under Seattle Municipal Code (SMC) 12A.20.050(B).[1] But, *1066 McLaughlin did not make the arrest. Ortega contends that Hockett, the arresting officer, did not have authority to arrest Ortega, because Ortega did not commit the misdemeanor in Hockett's presence as required by RCW 10.31.100.
¶ 12 The State responds that probable cause transferred from McLaughlin to Hockett under the fellow officer rule, also known as the collective knowledge doctrine or the police team rule. The fellow officer rule is not a creation of English common law. Rather, it was developed as part of a general liberalizing of the common law presence requirement in response to the challenges of policing in modern times with modern technology. See J. Terry Roach, Comment, The Presence Requirement and the "Police-Team" Rule in Arrest for Misdemeanors, 26 WASH. & LEE L.REV. 119, 119-21 (1969). Washington has adopted the fellow officer rule in the felony context. See, e.g., State v. White, 76 Wash.App. 801, 805, 888 P.2d 169 (1995), aff'd, 129 Wash.2d 105, 915 P.2d 1099 (1996); State v. Alvarado, 56 Wash.App. 454, 457-58, 783 P.2d 1106 (1989). Under this rule, in those circumstances where police officers are acting together as a unit, the cumulative knowledge of all the officers involved in the arrest may be considered in deciding whether there was probable cause to apprehend a particular suspect. State v. Maesse, 29 Wash.App. 642, 647, 629 P.2d 1349 (1981) (holding that information obtained by several officers investigating an arson was sufficient to form probable cause for a nonwitnessing officer to arrest the suspect without a warrant); see also State v. Wagner-Bennett, 148 Wash.App. 538, 542-43, 200 P.3d 739 (2009) (information not known by the arresting officer at the time but known by other officers at the time of the arrest was sufficient to form probable cause); State v. Mance, 82 Wash.App. 539, 542, 918 P.2d 527 (1996) (police department "hot sheet" bulletin may justify an arrest if the police agency issuing the bulletin has sufficient information to provide probable cause); White, 76 Wash.App. at 804-05, 888 P.2d 169 (information obtained by officer performing surveillance and radioed to arrest team was sufficient to form probable cause for felony); Alvarado, 56 Wash.App. at 455, 457-58, 783 P.2d 1106 (same); State v. Sinclair, 11 Wash.App. 523, 531, 523 P.2d 1209 (1974) (radio confirmation from police headquarters that the suspect had an outstanding warrant was sufficient to form probable cause). Cf. State v. Gaddy, 152 Wash.2d 64, 71, 93 P.3d 872 (2004) (holding that information obtained from the Department of Licensing may not be subject to the fellow officer rule).
¶ 13 No published misdemeanor prosecution case has explicitly held that the fellow officer rule applies. The State asserts that this court extended the fellow officer rule to misdemeanors in Torrey v. City of Tukwila, 76 Wash.App. 32, 882 P.2d 799 (1994). In Torrey, undercover police officers were investigating violations of standards of conduct at an adult entertainment club. Id. at 34, 882 P.2d 799. During the investigation, the undercover police officers observed a violation of the Tacoma Municipal Code that established probable cause for a misdemeanor. Id. at 37, 882 P.2d 799. Later that day, another officer arrested the dancers. Id. at 35, 882 P.2d 799. In a civil suit against Tukwila claiming violations of several constitutional rights, the dancers claimed that their arrest violated RCW 10.31.100, because the arresting officer was not the officer who observed the misdemeanor. Id. at 39, 882 P.2d 799. In response to the dancer's RCW 10.31.100 claim, this court stated, "We have no difficulty applying the fellow officer rule to the facts of this case." Torrey, 76 Wash. App. at 39, 882 P.2d 799 (citing Maesse, 29 Wash.App. at 647, 629 P.2d 1349, and Alvarado, 56 Wash.App. at 456-57, 783 P.2d 1106, as examples of Washington's adoption of the fellow officer rule). Both Maesse and Alvarado, however, involved arrests based on probable cause for a felony. Maesse, 29 Wash.App. at 648, 629 P.2d 1349; Alvarado, 56 Wash.App. at 455, 783 P.2d 1106.
¶ 14 The court in Torrey applied the federal fellow officer rule to a misdemeanor arrest. 76 Wash.App. at 39, 882 P.2d 799. The claim was civil rather than criminal and was based on violation of federal rights. Id. *1067 at 39-40, 882 P.2d 799. But, a claim of violation of RCW 10.31.100 is not grounded in the federal constitution. Id. The court was not squarely faced with the question before us. We are not constrained by it.
¶ 15 The State contends that Gaddy compels the application of the fellow officer rule here. Gaddy involved an arrest based on information obtained from the Department of Licensing. 152 Wash.2d at 70, 93 P.3d 872. The Supreme Court determined that the fellow officer rule did not apply to information obtained outside of law enforcement activities. Id. at 71, 93 P.3d 872. It noted that reliance on the fellow officer rule was not warranted. Id. It did not indicate that, the fellow officer rule would apply to arrests under RCW 10.31.100. Gaddy does not address the issue raised here.
¶ 16 The fellow officer rule was not available at common law. It has not been extended to the misdemeanor context under RCW 10.31.100 exceptions to the presence requirement. Neither has the Supreme Court applied the rule to a misdemeanor prosecution. Without these factors, it is for the legislature to extend the arrest authority of law enforcement officers. State v. Whatcom Cnty. Dist. Court, 92 Wash.2d 35, 38, 593 P.2d 546 (1979). We decline to adopt or extend that rule to the misdemeanor context.
¶ 17 Although we decline to adopt the fellow officer rule in the misdemeanor context, we hold that RCW 10.31.100 is not violated under these facts. The observing officer viewed the conduct, directed the arrest, kept the suspects and officers in view, and proceeded immediately to the location of the arrest to confirm that the arresting officers had stopped the correct suspects. McLaughlin's continuous contact rendered him a participant in the arrest. Although McLaughlin was not the officer who actually put his hands on Ortega, McLaughlin was an arresting officer in the sense that he directed the arrest and maintained continuous visual and radio contact with the arrest team.
¶ 18 If Officer A was driving a squad car with Officer B and Officer A witnessed a suspect commit a misdemeanor while Officer B did not, we would not construe the in the presence rule to require that Officer A could arrest the suspect but Officer B would need a warrant. Such a view of an arrest by a witnessing officer would be artificially narrow. The same is true here.
¶ 19 We hold the arrest of Ortega without a warrant did not violate RCW 10.31.100. Because the arrest was lawful, the search incident to the arrest was valid. Suppression of the evidence obtained during the search was not required. Because we hold that probable cause existed for the misdemeanor, we need not consider the State's argument that it also had probable cause to arrest Ortega for the commission of a felony.
¶ 20 We affirm.
WE CONCUR: DWYER, C.J., and GROSSE, J.
GROSSE, J. (concurring).
I concur in the result for the reasons stated. However, the discussion of the fellow officer rule in the context of RCW 10.31.100 is unnecessary to the decision and could be read as the foretelling further judicial evisceration of the statute, something I do not think the majority intends.
NOTES
[1] Under SMC 12A.20.050(B), "A person is guilty of drug-traffic loitering if he or she remains in a public place and intentionally solicits, induces, entices, or procures another to engage in unlawful conduct contrary to Chapter 69.50, Chapter 69.41, or Chapter 69.52, Revised Code of Washington."