[No. 60828-2-I.   Division One.   February 2, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. BEVERLY ANN WAGNER-BENNETT, *Appellant*.

*Casey Grannis* (of *Nielsen, Broman & Koch, PLLC*), for appellant.

*Janice E. Ellis, Prosecuting Attorney*, and *Seth A. Fine, Deputy*, for respondent.

¶1 BECKER, J. — Appellant Beverly Wagner-Bennett, arrested in a tribal casino for stealing a casino ticket, was convicted of possession of drugs based on evidence found

during a search incident to her arrest. The issue on appeal is whether police had probable cause to arrest her for theft. Wagner-Bennett contends her conduct was equally susceptible to the innocent explanation that she picked up the ticket thinking someone had abandoned it. Considering the ticket's cash value and the short time period it was left unattended, police could reasonably infer appellant intended to steal the ticket. The trial court did not err in denying the motion to suppress.

¶2 The arrest of Wagner-Bennett for alleged theft occurred at the Angel of the Winds Casino, a tribal casino in Arlington, in February 2007. In a search incident to arrest, police found methamphetamines in her purse. She was charged with possession of a controlled substance, not with theft.

¶3 Wagner-Bennett filed a motion to suppress all evidence obtained as a result of unlawful arrest and subsequent search. At the suppression hearing, the only witness to testify was Officer Felix Moran, who at that time was the tribal police chief.

¶4 The slot machine in question, called a "rocket machine," accepted cash or casino tickets. After playing the machine, the customer can cash out any money that may remain in it by receiving a paper ticket with the balance. The tickets do not have any information on them showing who they belong to.

¶5 The person who reported the theft was Shandra Denby. Denby cut her finger while playing and left the slot machine to get a napkin from a beverage center on the other side of the casino. There was still $17.00 in the slot machine. Denby also left behind a paper ticket with a cash value of $25.49 sitting on the slot machine. When Denby returned, she allegedly found Wagner-Bennett in the process of cashing out the $17.00 in the machine and the $25.49 ticket was missing. Denby took the $17.00 ticket away from Wagner-Bennett. Denby then reported the alleged theft to two security officers, T.J. Fields and Caleb Dawson.

¶6 Fields and Dawson notified Chief Moran of the theft allegation. Along with Sergeant Steve Hardy, Chief Moran went over to the casino. While Sergeant Hardy talked to Shandra Denby, Chief Moran talked to Fields and Dawson.

¶7 Fields and Dawson told Chief Moran that Denby had reported to them the theft of the $25.49 ticket. They informed him that before being contacted by Denby, they had observed Wagner-Bennett taking a ticket from the top of the machine Denby had been playing. There was no evidence, however, to indicate that before Wagner-Bennett approached the machine, she had been watching Denby or had seen her leave.

¶8 Chief Moran got on the radio with Sergeant Hardy and confirmed from Sergeant Hardy that Denby had witnessed the alleged theft. Chief Moran arrested Wagner-Bennett and placed her in handcuffs. A search incident to arrest turned up the drugs that resulted in the conviction.

¶9 At the suppression hearing, the trial court ruled that the arrest was supported by probable cause. The court then entered written findings of fact and conclusions of law. The trial court convicted Wagner-Bennett as charged at a trial on stipulated facts. Wagner-Bennett appeals.

¶10 We review findings of fact on a motion to suppress under the substantial evidence standard. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Conclusions of law are reviewed de novo. *State v. Eisfeldt*, 163 Wn.2d 628, 634, 185 P.3d 580 (2008). The determination of whether probable cause exists is also a question of law reviewed de novo. *State v. Chamberlin*, 161 Wn.2d 30, 40-41, 162 P.3d 389 (2007).

¶11 Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing that an offense has been committed. *State v. Graham*, 130 Wn.2d 711, 724, 927 P.2d 227 (1996). It is a reasonableness test, considering time, place, circumstances, and the

officer's special expertise in identifying criminal behavior. *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986). Probability, not a prima facie showing, of criminal activity is the standard for probable cause. *State v. Patterson*, 83 Wn.2d 49, 55, 515 P.2d 496 (1973).

¶12 Wagner-Bennett first challenges one finding of fact as not being supported by substantial evidence. Finding of fact 9 states, "Ms. Denby told Sgt. Hardy she had left the slot machine and returned *to find the defendant attempting to take the money from the machine* and her $25.49 ticket was missing. Sgt. Hardy radioed Chief Moran with this information." (Emphasis added.) Wagner-Bennett claims there was no evidence that Chief Moran heard about her attempt to cash out the machine before he made the arrest. Therefore, she argues, that fact should not be included in the facts within the arresting officer's knowledge when assessing the issue of probable cause.

¶13 As Wagner-Bennett points out, Chief Moran acknowledged during cross-examination that at the time of the arrest, Fields and Dawson had not told him about Denby's cashing-out allegation: "That was in their report later." But a later portion of the same cross-examination brought out that Denby accused Wagner-Bennett of stealing "the tickets" (plural) when she was being interviewed by Sergeant Hardy. Under the fellow officer rule, the information known to Sergeant Hardy may be considered in deciding whether or not there was probable cause to arrest, even if it was not expressly communicated to Chief Moran. *See State v. Maesse*, 29 Wn. App. 642, 647, 629 P.2d 1349, *review denied*, 96 Wn.2d 1009 (1981). In addition, there was a stipulation allowing the trial court to supplement the testimony with facts stated in the defense motion to suppress. In that motion, counsel set forth the information available to Chief Moran at the time he arrested Wagner-Bennett. This information included Denby's statement that when Denby returned to the machine she had been sitting at, "another person was sitting at the machine and ap-

peared to be cashing out funds that were on the slot machine and the ticket Ms. Denby had left on the machine was missing. Ms. Denby then accused/confronted the individual of stealing her ticket and successfully took the ticket out of the machine before the other individual could retrieve it." We conclude there is substantial evidence on the record to support finding of fact 9.

¶14 Wagner-Bennett next contends that the facts known to Chief Moran at the time of the arrest do not establish probable cause to believe she committed a theft. She points out that the crime of theft is not committed unless the defendant has the intent to deprive another of her property. RCW 9A.56.020. She argues that the fact that a person takes a ticket left behind on a machine does not mean there is a probability that she has the intent to deprive the rightful owner of possession. She contends that her conduct, viewed objectively, is just as plausibly explained as the act of a person who picks up property believing that it has been abandoned.

¶15 The State claims that abandonment is an affirmative defense that negates the mental element of the crime of theft. An arresting officer has no need to possess information negating an affirmative defense like self-defense. *McBride v. Walla Walla County*, 95 Wn. App. 33, 40, 975 P.2d 1029, *review denied*, 138 Wn.2d 1015 (1999). Relying on *McBride*, the State argues that it was not necessary for Chief Moran to consider whether the suspect reasonably could have believed the ticket was abandoned.

¶16 We decline to decide whether abandonment is an affirmative defense. Wagner-Bennett's argument goes to the intent element of the offense of theft, not to any defense she might have mounted at trial. This case can be more efficiently resolved by considering what information was known to Chief Moran and applying the ordinary test for probable cause.

¶17 Chief Moran knew Wagner-Bennett had taken the $25.49 ticket off the top of the machine while Denby was gone. The security guards, Fields and Dawson, told him

they saw her do it. From the fact that Denby reported the incident as a theft, Chief Moran knew that Denby claimed ownership of the missing ticket. He testified that he "always" would consider the possibility that a ticket left lying around had been abandoned, but he rejected that possibility under the circumstances presented:

> [Chief Moran]: . . . you know, if she was gone for a half an hour and came back and said, hey, I left a ticket in this machine and I think that person took it, there wouldn't have been a theft arrest, because I would have, as a law enforcement officer, I would have considered it abandoned at that time. But because we have a real close, proximate amount of time involved here where she's only gone a few minutes to take care of her finger and her intent was never to leave the machine, because she came back to it specifically after taking care of her finger, because of that, I determined there was no abandonment.

¶18 Based on Chief Moran's testimony, the trial court did not err in concluding that Chief Moran had probable cause to arrest for theft. As the court found, a casino ticket with a cash value of $25.49 is "not the type of property that someone would knowingly abandon." The time period during which the tickets were left unattended was "short." Chief Moran knew that Denby found Wagner-Bennett attempting to cash out the $17.00 in the machine and stopped her from doing so. And he knew that Wagner-Bennett, having been confronted by Denby, simply left with the $25.49 ticket and walked over to the other side of the casino. An innocent explanation for Wagner-Bennett's conduct may be possible, but under these circumstances, it is not as likely as the guilty explanation. Chief Moran could reasonably infer that Wagner-Bennett intended to steal the ticket from its rightful owner.

¶19 The trial court properly denied the motion to suppress. The conviction is affirmed.

AGID and LEACH, JJ., concur.