IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37973-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATHANIEL WILFRED BROUSSARD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Nathaniel Broussard was charged with several crimes after police found him in a fenced backyard with a bag of tools and the homeowner's wallet in his pocket. Before trial, the sheriff's office posted information about the arrest to its social media page, including commentary on Mr. Broussard's notoriety and criminal history. Mr. Broussard appeals his subsequent convictions for second degree burglary and making or having burglar tools, arguing that the social media post amounted to government misconduct and there was insufficient evidence to prove the intent elements of both crimes. We affirm Mr. Broussard's convictions for burglary in the second degree and making or having burglar tools. We reverse his conviction for possession of a controlled substance.

## I.  FACTS

On March 24, 2018, Pierce County Sheriff Deputy Bradley Crawford was dispatched to a home in Parkland, Washington.  A neighbor reported that a male wearing dark clothing and carrying a backpack approached the front door of her neighbor's home.  Without knocking, he shook the door unsuccessfully trying to open it before proceeding through the gate into the fenced backyard.  At trial, the neighbor testified that she was friends with the homeowner, who had not been living there for several years, and was keeping an eye on her friend's house because there had been several break-ins.

Deputy Crawford arrived at the house and noticed that the gate was open.  As he entered the backyard, he saw a shed with the door open and someone moving inside.  Deputy Crawford announced his presence and ordered the person to come out.  Mr. Broussard exited the shed and dropped a black bag at the door threshold.  Deputy Crawford recognized Mr. Broussard from prior contacts.

Mr. Broussard was detained.  After being read his *Miranda* rights and waiving them, Mr. Broussard admitted that he had made a mistake and believed that the property was abandoned.  During a frisk for weapons, the deputy located a handgun[1] and screwdriver along with an empty knife sheath on Mr. Broussard's belt.  Deputy Crawford was aware of Mr. Broussard's prior felony convictions and arrested him for unlawful

---

[1] The handgun was later found to be inoperable.

2

possession of a firearm.  During a search of Mr. Broussard incident to arrest, the deputy found a red leather wallet containing deposit slips with the property owner's name on them and a plastic bag of methamphetamine.

When asked why he was at the residence, Mr. Broussard answered that he "believed the residence was vacant and that he went into the shed to take items from it." Report of Proceedings (RP) at 161.  Mr. Broussard acknowledged that he had taken the deposit slip book from the shed.  He also admitted that he did not know the owner or have permission to be on the property.  Finally, Mr. Broussard confessed that he knew it was illegal to enter buildings and take things that did not belong to him, and "it was a mistake what he did."  RP at 178-79.

The bag dropped by Mr. Broussard contained a pair of black gloves, two cordless drills, and several drill bits.  Deputy Crawford described these as "tools that could be used to force entry into a residence or . . . shed."  RP at 141.  He noted that the gloves could "potentially be used to prevent from leaving fingerprints at the scene of a burglary."  *Id.*

By amended information, the State charged Mr. Broussard with second degree burglary with a firearm and deadly weapon enhancement, unlawful possession of a controlled substance, identity theft in the second degree, and making or having burglar tools.

3

Five days after detaining Mr. Broussard, the Pierce County Sheriff's Department added a post to its Facebook page about Mr. Broussard's arrest and criminal history. The title of the post read: "'Bad boys, bad boys, whatcha gonna do, whatcha gonna do when they come for you'; serial burglar caught in shed, deputies recognize him from COPS episode & arrest him for the 32nd time!" Clerk's Papers at 77-79. The post also included several assertions later determined to be false, such as its claim that the homeowner was hospitalized and statements suggesting that the firearm found on Mr. Broussard's person was operable. The post generated more than 100 comments and was shared 91 times within five days. The post was removed by the sheriff's department pursuant to a court order on January 14, 2019.

Prior to trial, Mr. Broussard moved to dismiss the charges under CrR 8.3(b), claiming the Facebook post constituted outrageous government misconduct and that the publicity prejudiced his right to a fair trial. The trial court found that the Facebook post constituted governmental misconduct but denied the motion to dismiss because Mr. Broussard had failed to show prejudice. The trial court noted that actual prejudice could be eliminated by voir dire.

The case proceeded to trial. During voir dire, a questionnaire was submitted to potential jurors asking whether the jurors had seen the sheriff's Facebook post at issue, any other Facebook posts or media generally related, and whether jurors were familiar with Mr. Broussard's case. Attorneys for both parties had the opportunity to question

jurors individually.[2] Those who had seen or had heard about Mr. Broussard's case were excused. Mr. Broussard did not exercise all of his available peremptory challenges and accepted the jury as seated without renewing his CrR 3.8(b) motion. No seated juror saw the Facebook post or was otherwise familiar with the case or Mr. Broussard.

At the close of the State's evidence, Mr. Broussard moved to dismiss all of the charges for insufficient evidence. The trial court granted the motion to dismiss the identity theft charge and the firearm enhancement. However, it denied the motion to dismiss the burglary charge, unlawful possession of a controlled substance, and making or having burglar tools.

Mr. Broussard proposed a jury instruction on the affirmative defense of abandonment, but the trial court declined because the record did not support that the real property had been abandoned.[3] Mr. Broussard was found guilty of burglary in the second degree, unlawful possession of controlled substance (methamphetamine), and making or having burglar tools. Mr. Broussard timely appealed.

## II.     ANALYSIS

### A.  Motion to dismiss for Government Misconduct

Mr. Broussard assigns error to the trial court's denial of his motion to dismiss under CrR 8.3 for government misconduct. He contends that the sheriff's Facebook post

---

[2] Individual voir dire was reported but not transcribed.
[3] Mr. Broussard does not challenge the jury instructions.

was a concerted effort to prejudice the potential jury pool and deprived him of a fair trial. He asserts that the post was highly inflammatory, contained inaccurate information, and improperly publicized Mr. Broussard's criminal history. Finally, Mr. Broussard argues that the prejudice caused by this post could not be cured with a jury instruction given how widespread the post was disseminated. The State responds that even if the post to social media was misconduct, Mr. Broussard fails to show prejudice.

The trial court's ruling on a motion to dismiss is discretionary and reviewable only for manifest abuse of discretion. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). A trial court's decision is manifestly unreasonable if it is based on untenable grounds or for untenable reasons. *Id*. A decision is based "on untenable grounds" or made "for untenable reasons" if it rests on facts unsupported in the record or was reached by applying the wrong legal standard. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). Even if the court applies the correct legal standard to supported facts, a decision can still be "'manifestly unreasonable'" if the court adopts a view that no reasonable person would take. *Id*. (quoting *State v. Lewis*, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990)).

Before charges can be dismissed under CrR 8.3(b), the defendant must show (1) arbitrary action or governmental misconduct and (2) prejudice affecting the defendant's right to a fair trial. *Michielli*, 132 Wn.2d at 239-40. Dismissal under CrR 8.3(b) is an

6

"'extraordinary remedy.'" *Rohrich*, 149 Wn.2d at 658. Thus, the defendant must show actual prejudice, not speculative prejudice. *Id*. at 658.

Mr. Broussard argues that the misconduct in this case created unwarranted publicity that deprived him of a fair trial by infecting the potential jury venire and impacting his right to an impartial jury. Instead of showing actual prejudice, Mr. Broussard argues that we should presume prejudice because the dissemination of misinformation in this case was so widespread that it could not be cured by a jury instruction. The cases Mr. Broussard relies on to support this theory are not on point and not persuasive.[4]

Contrary to Mr. Broussard's argument, the impact of pretrial publicity on a jury venire can often be gauged through effective voir dire. *See State v. Munzanreder*, 199 Wn. App. 162, 175, 398 P.3d 1160 (2017). In *Muzanreder*, the defendant did not argue

---

[4] In *Cory*, officers eavesdropped on a privileged discussion between the defendant and defense counsel and revealed statements to the prosecution. The court held that such constitutional violations were egregiously prejudicial to a fair trial and effective representation. *State v. Cory*, 62 Wn.2d 371, 377, 382 P.2d 1019 (1963). *State v. Granacki*, involved an officer revealing a defendant's privileged trial notes to the State during a recess. 90 Wn. App. 598, 600-04, 959 P.2d 667 (1998); *State v. Irby*, involved jail guards opening defendant's privileged mail. 3 Wn. App. 2d 247, 415 P.3d 611 (2018). *State v. Sherman* involved theft of employer funds and the State violated a specific discovery order to produce the victim's financial records central to the charge prejudicing effective assistance of counsel and speedy trial rights. 59 Wn. App. 763, 768-69, 801 P.2d 274 (1990). *State v. Martinez* is also distinguishable for similar reasons where it involved failure of the State to disclose material exculpatory evidence to the defense prejudicing due process. 121 Wn. App. 21, 35-36, 86 P.3d 1210 (2004).

government misconduct but did argue that the pretrial publicity on his case was so

pervasive that the trial court erred in denying his motion for change of venue. The court

recognized that in order to prevail on a motion to change venue, the defendant need only

show the probability of unfair prejudice. *Munzanreder*, 199 Wn. App. at 180 (citing

*Sheppard v. Maxwell*, 384 U.S. 333, 351-52, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966);

*State v. Rupe*, 108 Wn.2d 734, 750, 743 P.2d 210 (1987)).

The best test of whether an impartial jury can be empaneled is to attempt to

empanel one and not presume bias before voir dire. *State v. Jackson*, 150 Wn.2d 251,

269-70, 76 P.3d 217 (2003). In addition, when pretrial publicity is a concern, the trial

court can take extra measures to protect a defendant's right to an impartial jury, such as

providing additional peremptory challenges and relaxing the standard for granting

challenges for cause. *Munzanreder*, 199 Wn. App. at 182-83. However, when a

defendant accepts a jury as constituted and does not exhaust peremptory challenges, he

cannot show prejudice based on the jury's composition. *State v. Elmore*, 139 Wn.2d 250,

277-78, 985 P.2d 289 (1999) (defendant failed to object to improper voir dire questions

and did not exhaust challenges was precluded from arguing prejudice from the jury

selection for the first time on appeal).

In this case, the trial court allowed the parties to question potential jurors about

their exposure to the case and generously removed any juror who had heard of the case.

*See Jackson*, 150 Wn.2d at 269-70 (Bias requires more than exposure; it requires a firm

8

and fixed opinion about the case that cannot be set aside.). Mr. Broussard did not exhaust his peremptory challenges and did not move for a change of venue. Even if we were to apply a standard of probable prejudice, Mr. Broussard does not meet this standard. The trial court did not abuse its discretion in denying the CrR 8.3(b) motion to dismiss.

B. Sufficiency of the Evidence

Next, Mr. Broussard challenges the sufficiency of the evidence used to convict him of burglary in the second degree and making or having burglar tools. He contends that there is insufficient evidence that he entered the property with the intent to commit a crime and no evidence that he intended to use the tools found in his possession to commit burglary.

We review a challenge to the sufficiency of evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). "To determine whether the evidence is sufficient to sustain a conviction, we view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009).

A person is guilty of burglary in the second degree if he (1) enters or remains unlawfully in a building (2) with the intent to commit a crime therein. RCW 9A.52.030(1). Mr. Broussard concedes that he trespassed by entering the victim's shed

without license. He argues nonetheless that the evidence is insufficient to prove his intent to commit a crime because he believed that the property was abandoned and one cannot commit theft of abandoned property, citing *State v. Wagner-Bennett*, 148 Wn. App. 538, 543, 200 P.3d 739 (2009).

The intent required by our burglary statute is simply the intent to commit *any* crime against a person or property inside the burglarized premises. *State v. Bergeron*, 105 Wn.2d 1, 4, 711 P.2d 1000 (1985) (emphasis added). Intent may be inferred from conduct that indicates such intent as a matter of logical probability. *Id*. at 20. In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). These inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." *Id*. Further, we must defer to the trier of fact to resolve conflicting testimony and evaluate the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) (Credibility determinations cannot be reviewed on appeal).

In this case, the record supports an inference that Mr. Broussard intended to commit a number of other potential crimes.[5] Given the circumstances in which he was

---

[5] Here the facts support an inference of the following crimes: malicious mischief (damaged shed door), possession of controlled substance (methamphetamine), making or having burglar tools (drills/bits/gloves/screwdriver), theft (wallet).

found, the jury was free to disbelieve Mr. Broussard's assertion that he thought certain real or personal property was abandoned.

Additionally, under the statute's plain language, abandonment does not apply and is not a defense to second degree burglary. *State v. Olson*, 182 Wn. App. 362, 377, 329 P.3d 121 (2014) (citing *City of Bremerton v. Widell*, 146 Wn.2d 561, 51 P.3d 733 (2002)) (our Supreme Court held that statutory defenses are not affirmative defenses because the statutory defenses to criminal trespass negate the unlawful presence element of the crime of criminal trespass).

The cases cited by Mr. Broussard are distinguishable. In *State v. Woods* the court held that Mr. Woods, a minor, could not intend to steal his own property from his mother's home thus, there was insufficient evidence to support a burglary charge. 63 Wn. App. 588, 591, 821 P.2d 1235 (1991). In *State v. Miller*, the State could not prove unlawful entry of a commercial property that was open to the public 24 hours a day. 90 Wn. App. 720, 725, 954 P.2d 925 (1998).

In this case, the evidence was sufficient for the trier of fact to find that Mr. Broussard entered the fenced backyard with the intent to commit a crime.

Mr. Broussard also challenges the sufficiency of evidence to support his conviction for making or having burglar tools. A person is guilty of making or having burglar tools if he (1) possessed a tool adapted, designed, or commonly used for the

11

commission of burglary (2) under circumstances evincing an intent to use or employ the tools in the commission of a burglary. RCW 9A.52.060(1).

Similar to his challenge of the burglary charge, Mr. Broussard also contends that the evidence was insufficient to prove the intent element of this crime. However, taken in the light most favorable to the State, there is more than sufficient evidence for the jury to find he possessed the tools with the intent to employ them in the commission of a burglary. A neighbor observed Mr. Broussard unsuccessfully attempting to break into the front door of the victim's house while dressed in dark clothes. He then walked through a gate and into the home's fenced backyard without permission and without knowing the owner. Deputy Crawford found him inside the shed with a screwdriver capable of breaking the shed door with a bag holding other commonly known burglary tools, including drills, drill bits, and gloves. The shed door was damaged. He was also armed with a gun and knife. In his pocket, he had the victim's wallet and personal information which he admitted taking from the shed.

Sufficient evidence supports both of Mr. Broussard's convictions.

C. Possession of Controlled Substance

While Mr. Broussard's appeal was pending, the Supreme Court decided *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). The parties agree that Mr. Broussard's conviction is directly impacted by *Blake*. In light of this concession, we reverse Mr.

No. 37973-6-III
*State v. Broussard*

Broussard's conviction for possession of controlled substance and remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Siddoway, J.

13